UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DONALD FULLER,

Plaintiff,

-against-

THE CITY OF NEW YORK,
CAPTAIN DREW KASTNER,
SERGEANT JAMES HEGARTY,
OFFICER ROBERTO OVIEDO,
OFFICER LOUIS GUGLIEMO,
OFFICER ROBERT MEYER,
OFFICER CHRISTOPHER EGAN, and
OFFICER REBECCA GUZMAN,

Defendants.

------------------------------------------------------------x

12-CV-5460 (HB)

**SECOND AMENDED**
**COMPLAINT**
**AND**
**JURY DEMAND**

Plaintiff Donald Fuller, by and through his attorneys, Cuti Hecker Wang LLP, for his Second Amended Complaint alleges as follows:

**INTRODUCTION**

1.      Donald Fuller is a lifelong New Yorker who has resided in the same Bronx apartment for over 33 years.  Mr. Fuller keeps to himself, spending much of his time alone in his apartment or in the company of his two sisters.

2.      Mr. Fuller is thin and relatively frail.  He walks with a slight limp and a stooped back, and is 55 years old.

3.      Mr. Fuller's quiet existence was shattered on the night of November 30, 2011 when four New York City Police Department ("NYPD") officers, ostensibly responding to Mr. Fuller's complaints about his neighbors, barged into his apartment without a warrant and without Mr. Fuller's consent, knocked him to the floor,

menacingly donned rubber gloves, and proceeded to kick and strike Mr. Fuller repeatedly and relentlessly in the shoulder, arm, head, and torso until Mr. Fuller began to lose consciousness on the floor of his own home.

4.     With Mr. Fuller already knocked to the floor and surrounded by four armed officers, the officers continued to hit Mr. Fuller and tasered him at least twice before handcuffing his hands behind his back and throwing him onto a stretcher, forcing his entire body weight onto his already-injured shoulder.

5.     Neighbors could hear Mr. Fuller calling for help.  He was totally unarmed and posed no threat to the multiple armed officers who surrounded him.  He had no idea why the officers were treating him with such violence, and was terrified and confused. Mr. Fuller had thought – and hoped – that the officers were coming to help him.  Instead, Mr. Fuller was brutally beaten in his own home.

6.     Mr. Fuller was taken by ambulance to a nearby hospital, where, despite the fact that Mr. Fuller had not been charged with any crime whatsoever, a police officer guarded his door or patrolled the hall outside his room.

7.     Multiple surgeries were required to repair the damage the NYPD officers caused to Mr. Fuller's shoulder and clavicle, and Mr. Fuller has suffered and will continue to suffer severe pain throughout his upper body as a result of the NYPD officers' brutal beating of him in his own apartment.

8.     Mr. Fuller is haunted physically and emotionally by the events of that evening, which turned his trust for the NYPD on its head.  The NYPD officers' coordinated and vicious brutalization of Mr. Fuller in his own home caused him serious and lasting injuries, for which the City has never apologized and for which it has never offered any explanation.

2

## JURISDICTION AND VENUE

9.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, Article I, § 12 of the New York State Constitution, and New York common law.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

11.     Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

12.     Plaintiff Donald Fuller is a citizen and resident of Bronx, New York, where he resided at the time of the events giving rise to this complaint and where he continues to reside.

13.     Defendant City of New York (the "City") is a municipality organized and existing under the laws of the State of New York.  At all times relevant hereto, the City, acting through the New York City Police Department, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

14.     Defendant Captain Drew Kastner is a member of and Captain in the NYPD.  He has offices at One Police Plaza, Room 1406, New York, New York 10038.

15.     Defendant Sergeant James Hegarty is a member of the NYPD and has offices at One Police Plaza, Room 1406, New York, New York 10038.

3

16.     Defendant Police Officer Roberto Oveido, NYPD shield number 19919, is a member of the NYPD.  Oveido is assigned to the 44th Precinct, located at 2 East 169th Street, Bronx, New York 10452.

17.     Defendant Police Officer Louis Gugliemo, NYPD shield number 19613, is a member of the NYPD.  Gugliemo is assigned to the 44th Precinct, located at 2 East 169th Street, Bronx, New York 10452.

18.     Defendant Police Officer Robert Meyer, NYPD shield number 17234, is a member of the NYPD.  Meyer is assigned to the 44th Precinct, located at 2 East 169th Street, Bronx New York 10452.

19.     Defendant Christopher Egan, NYPD shield number 14190, is a member of the NYPD.  Egan is assigned to the 44th Precinct, located at 2 East 169th Street, Bronx, New York 10452.

20.     Defendant Rebecca Guzman, NYPD shield number 20432, is a member of the NYPD.  Guzman is assigned to the 44th Precinct, located at 2 East 169th Street, Bronx, New York 10452.

21.     Plaintiff made diligent efforts to identify all of the relevant NYPD officers prior to filing his first Amended Complaint on November 21, 2012, including by providing as much identifying information as possible to the City about the officers involved and by making the City aware of their existence and of Plaintiff's desire to include them as defendants in this action.  As of November 21, 2012, the City had not yet provided Guzman's or Egan's name to Plaintiff despite Plaintiff's repeated requests and Plaintiff's repeated attempts to confirm that the City had provided him with the names of all of the officers who were in or around the entry to Mr. Fuller's apartment at the time of the incidents forming the basis for this Mr. Fuller's claims and described herein

22.     At all relevant times, Kastner, Hegarty, Oviedo, Gugliemo, Meyer, Egan, and Guzman (collectively, the "Officer Defendants") were acting under color of state law.

### JURY DEMAND

23.     Plaintiff hereby demands a trial by jury.

### FACTUAL ALLEGATIONS

24.     Plaintiff Donald Fuller resides in an apartment on the first floor of 1177 Anderson Avenue in the Bronx, and has lived at that address for 33 years.  He is 55 years old, nearly 6 feet, but weighs only 165 pounds.

25.     On November 30, 2011, at approximately 7:00pm, Mr. Fuller was inside his home when he heard disturbingly loud noises coming from a neighbor's apartment.  It seemed to Mr. Fuller that people in the neighbors' apartment were banging on the floors (*i.e.*, Mr. Fuller's ceiling) and walls.

26.     A few minutes later, there was a knock at Mr. Fuller's apartment door.

27.     He opened the door to find four or five police officers standing just outside the entrance to his apartment, including, on information and belief, some or all of the Officer Defendants.

28.     The officers asked Mr. Fuller if he had called them; he answered in the negative and suggested that it must have been a neighbor calling to complain about the same noisy tenants who were troubling him, and whose loud and raucous parties had caused cracks and damage to Mr. Fuller's ceiling (the neighbors' floor).

29.     Mr. Fuller informed the police that the neighbors had been making a racket but that the noise seemed to have abated and everything was all right.

30.   The police left.

31.   Mr. Fuller closed his door and spoke to his sister on the phone to inform her that the police had just been to his apartment and that everything was okay.

32.   Approximately 10 or 15 minutes later, the loud noises and banging from the neighbors' apartment resumed. The volume and intensity of the sound bothered Mr. Fuller, and he feared further damage to his apartment's ceiling and walls.

33.   Mr. Fuller called 911. He informed the 911 operator that the police had been to his apartment minutes before, and explained that the people in a neighboring apartment were banging and stomping, that they did this routinely, and that Mr. Fuller would "just like it to stop."

34.   Mr. Fuller indicated that he was not sure which City helpline was the proper number to call with this kind of complaint: 311 or 911.

35.   The 911 operator asked if Mr. Fuller wanted the police to return to his apartment. Mr. Fuller voiced frustration at his neighbors' conduct and told the operator that, yes, he "need[ed] help" with his neighbors, and that he would like the police to "contact [the neighbors] if they can and tell them to stop."

36.   When the 911 operator asked Mr. Fuller if he would meet with the police, he stated that, yes, he "would be willing to meet with them." Mr. Fuller then gave his last name, address, and telephone number to the operator. The operator assured Mr. Fuller that the police would arrive at his apartment as quickly as possible and ended the call. At no point in the call did Mr. Fuller indicate that there was any emergency or crime taking place.

37.   A few minutes later, the police arrived at Mr. Fuller's apartment and banged on the door.

6

38.   By the time the police arrived, the noise from his neighbors' was beginning to quiet down, but Mr. Fuller nevertheless was relieved that the police had arrived to help him handle the neighbors.

39.   But the police had not come to help Mr. Fuller.

40.   Mr. Fuller partially opened his door. Mr. Fuller found about four officers standing around his apartment door. This group included some or all of the Officer Defendants, but did not include Captain Kastner.

41.   One of the officers was female. The female officer and one male officer, who had blonde hair in a crew cut, were heavyset. The female officer wore eyeglasses. The two other officers were younger men of average build; one was white and the other, on information and belief, was Hispanic.

42.   Mr. Fuller began to explain the nature of the disturbance and the damage his apartment had suffered as a result of similar past episodes to the officers, who were still standing just outside the threshold to Mr. Fuller's apartment.

43.   An officer interrupted Mr. Fuller and informed Mr. Fuller that an ambulance was waiting for him outside. Mr. Fuller was confused. Mr. Fuller noticed the officers putting on rubber gloves. He saw that one officer was holding a billy club. He stopped trying to explain the night's events.

44.   Without asking permission to come in or explaining any further, the officers forced their way into Mr. Fuller's apartment, pushing past Mr. Fuller and through the open door. Mr. Fuller noticed that once inside, one officer reached inside the apartment's front door and flipped the deadbolt, so the door could not close or lock.

45.   After forcing themselves inside his home of 33 years, the officers began to push and shove Mr. Fuller's upper body. An officer began to wrestle Mr. Fuller

7

to the ground.  Mr. Fuller – afraid and having no idea why the officers were responding to his call for help with such violent force against him – tried to stay on his feet.  But Mr. Fuller did not push back.

46.     The officers forced Mr. Fuller to the floor and then kicked – and also possibly punched – Mr. Fuller viciously and repeatedly in the thighs arms, chest, and shoulders.  Upon information and belief, the officers also kicked or punched Mr. Fuller's head, and beat him with at least one night stick.

47.     Mr. Fuller repeated to the officers that he thought they were making a mistake.  Panicked and uncomprehending, Mr. Fuller asked if he was being charged with having committed a crime.  The response was swift and brutal:  never stopping their cascade of kicks, the officers barked at Mr. Fuller to "shut up!"

48.     Mr. Fuller cried out: "I thought you were here to help me!"  The officers' response was the same:  "shut up!"

49.     Upon information and belief, neighbors could hear Mr. Fuller's cries for help and things in his apartment crashing to the floor.

50.     The kicking and punching continued.

51.     Eventually, the kicking and punching ceased, and one of the officers handcuffed Mr. Fuller's hands behind his back.

52.     At some point just before or just after he was handcuffed, Mr. Fuller observed an officer who held a nightstick – on information and belief, Sergeant Hegarty – take a Taser gun in his hand.  The officer then tasered Mr. Fuller in the back approximately two times.

53.     Mr. Fuller was tired and angry and scared.  He felt extreme pain.

54.     The officers put Mr. Fuller on his back on a stretcher and took him out of his apartment. He was lying with his entire weight on his hands, with his shoulders splayed out unnaturally. He was dazed and barely conscious, but continued to feel extreme pain.

55.     An ambulance was waiting outside. Throngs of police including officers and supervisors, including at least two officers wearing white shirts, appeared to have gathered outside the building. On information and belief, the officers wearing white shirts were supervisors who were directing the Officer Defendants (other than Captain Kastner) to use excessive force and unlawfully imprison Donald Fuller.

56.     At some point after being put in the ambulance, Mr. Fuller lost consciousness. When he awoke, he was at Lincoln Hospital. His handcuffs had been removed. Mr. Fuller does not know for how long he was unconscious. He was confused and scared.

57.     Around the time that Mr. Fuller was transported to the hospital, Captain Kastner called Mr. Fuller's sister on the telephone and interrogated her about her brother, telling her he was in the hospital and focusing only on questions regarding any drug use. Ms. Fuller was worried about her brother's health and how it came to be that he was suddenly in the hospital, but the officer ignored her repeated pleas for information about Mr. Fuller until the officer got the information he wanted: That Mr. Fuller was not using any illegal drugs.

58.     Despite Ms. Fuller's confidence that Mr. Fuller was not using any such drugs, Captain Kastner called her a second time only a few minutes after his first call, and again insisted that Ms. Fuller tell him what drugs her brother used. Again, she insisted that he was not using any drugs. And again the Captain refused to provide her

9

with any detailed information about her brother, or with reassurances that Mr. Fuller was all right.

59.     On information and belief, Captain Kastner directed the Defendant Officers that evening in their use of excessive force and unlawful imprisonment, without any basis, of Donald Fuller. Captain Kastner also told another person in the building – on information and belief, falsely – that five officers had been injured in the interaction with Mr. Fuller. On information and belief, Mr. Fuller was the only person injured.

60.     Mr. Fuller awoke to find a string of stitches along his right shoulder, which stitches were covered with bandages. He was hooked up to an IV drip.

61.     Mr. Fuller's face and body were covered with contusions. He felt extreme soreness and pain throughout his body.

62.     Mr. Fuller observed a police officer in the hallway outside his hospital room. He did not know why the officer was there.

63.     Mr. Fuller's doctors explained the extent of his injuries to him: The NYPD officers had broken Mr. Fuller's 9th rib, right humerus (on information and belief, the long bone in the arm that runs from the shoulder to the elbow), and clavicle, and had caused severe bruising to his face, upper body, and legs, and left Mr. Fuller with multiple lacerations to his face.

64.     The humerus fracture required two surgeries, during which one or more metal plates and screws were placed in Mr. Fuller's shoulder. Upon information and belief, Mr. Fuller will have to live with this metal in his body for the rest of his life. After the surgeries, Mr. Fuller was required to keep his arm in a sling virtually fulltime for approximately three months.

65.     The doctors also removed at least one Taser dart from Mr. Fuller's lower back and on information and belief found other evidence of "several" Taser discharges.

66.     No one from the City or the NYPD has ever explained to Mr. Fuller what happened, or why the officers responded to him with kicks, punches, and a stun gun rather than the help for which he had called them.

67.     As a direct and proximate result of Defendants' forced entry into his home and deployment of breathtaking force against an unarmed, slight man in his 50's, all of which constituted unlawful assault, battery, and imprisonment, Plaintiff Donald Fuller suffered physical pain and suffering, and has suffered and continues to suffer physical pain and suffering, reputational injury, medical expenses, emotional harm, and other losses.  Immediately after the attack Mr. Fuller has suffered severe, permanent, and traumatic physical injuries as a result of the events.

68.     Mr. Fuller has not been charged with any crime alleged to have taken place on the night of November 30, 2011, or otherwise arising from the incidents at issue in this Complaint.

69.     Mr. Fuller filed a sworn notice of claim on February 3, 2012, within 90 days after the claims alleged herein arose.  The notice was served on defendants by hand on February 3, 2012, and Mr. Fuller received a letter, dated February 6, 2012, from the City's Office of the Comptroller acknowledging receipt of the notice.

70.     At least 30 days have elapsed since Mr. Fuller served his notice of claim, and adjustment or payment of the claim has been neglected or refused.

71.     Mr. Fuller filed his Complaint commencing this action on July 16, 2012, and the affidavit of service therefor on July 25, 2012.

72.     This action has been commenced and this Amended Complaint has been filed within one year and ninety days after the events giving rise to Mr. Fuller's claims occurred.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
(Against the Officer Defendants)

73.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth herein.

74.     The Officer Defendants deprived Mr. Fuller of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, without limitation, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, by, *inter alia*: using excessive force and assaulting Mr. Fuller, causing him serious physical injury and emotional harm; falsely imprisoning Mr. Fuller; and entering Mr. Fuller's apartment without Mr. Fuller's permission.

75.     The Officer Defendants wrongfully and intentionally deployed and used far greater force and violence against Mr. Fuller than would have been necessary to restrain him, even if such restraint had been required.

76.     The Officer Defendants' use of force was objectively excessive, in that the four officer defendants used a billy club, a Taser, and their hands and feet, to brutalize an unarmed, waifish, 55-year-old man who was neither violent nor resistant. Such force would be unjustified absent a real, immediate, and severe threat to the officers' safety by an individual.  Here, there was no threat to the officers at all, let alone one of sufficient severity and immediacy to warrant the fusillade of punches, kicks, strikes, and Tasers that the Officer Defendants deployed against Plaintiff.

77.     The Officer Defendants wrongfully and intentionally detained and imprisoned Plaintiff in his home and later in the hospital (where Plaintiff saw police outside his room).  Plaintiff was not accused to have committed any crime and was peacefully within his own home when the Officer Defendants intruded, detained him, and battered him, requiring multiple surgeries, hospitalization, physical therapy, and severe and lasting pain and suffering.

78.     Plaintiff was aware and conscious of this detention, both before he lost consciousness as a result of the excessive force the Officer Defendants employed against him, and after regaining consciousness in the hospital.  The Officer Defendants blocked egress from his apartment, held his limbs, used physical force to prevent him from moving, and eventually handcuffed him.  Mr. Fuller was never charged with any crime.

79.     The wrongful, unjustifiable, and unlawful apprehension, detention, and imprisonment of Plaintiff was carried out without a warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion that Plaintiff had or was about to commit any crime or do harm to himself or others in any manner, in violation of the rights guaranteed to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution.

80.     The Officer Defendants conspired among themselves to deprive Mr. Fuller of the constitutional rights secured by the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, and took numerous overt steps in furtherance of such conspiracy, including without limitation and as set forth above, forcing their way into Mr. Fuller's apartment and using outsize and brutal force on Mr. Fuller.

81.    In taking the actions complained of in the foregoing paragraphs, the Officer Defendants acted under pretense and color of state law, in their individual and official capacities, and within the scope of their respective employment as NYPD officers.  The Officer Defendants' actions were without authority of law and were an abuse of the Officer Defendants' powers, and the Officer Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Fuller of his rights under the Fourth and Fourteenth Amendments to the United States Constitution (as made actionable by 42 U.S.C. § 1983).

82.    Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard for Plaintiff's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct towards Plaintiff.

83.    As a direct and proximate result of the misconduct detailed above, plaintiff sustained the damages alleged in this Amended Complaint.

## SECOND CAUSE OF ACTION
New York State Constitution, art. I, § 12
(Against All Defendants)

84.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth herein.

85.    By using excessive force and assaulting Mr. Fuller, the Officer Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 12 of the New York Constitution.

86.    In addition, the Officer Defendants conspired among themselves to deprive Plaintiff of his constitutional rights secured by Article I, § 12 of the New York

Constitution, and took numerous over steps in furtherance of such conspiracy, as set forth above.

87.     The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers.  Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, § 12 of the New York Constitution.

88.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of Plaintiff's state constitutional rights.

89.     Defendant City, as employer of each of the Officer Defendants is responsible for their wrongdoing under the doctrine of *respondeat superior*.

90.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein alleged.

### THIRD CAUSE OF ACTION
False Imprisonment
New York State Constitution, art. I, § 12
(Against all Defendants)

91.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth herein.

92.     The individual Officer Defendants wrongfully and illegally detained and imprisoned Plaintiff by restraining him in his own home without probable cause – or even suspicion – that he had committed any crime, was about to commit any crime, or posed any threat of physical harm to the NYPD officers or anyone else.  The

wrongful and false imprisonment of Mr. Fuller continued when he was transferred to a local hospital, where he noticed a police officer outside his room.  The officer was there despite the fact that Mr. Fuller had not been charged with or accused of any crime.

93.    The wrongful, unjustifiable, and unlawful apprehension, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion, in violation of the New York Constitution.

94.    At all relevant times, Defendants acted forcibly in restraining and imprisoning Plaintiff, including, without limitation and described above, by striking Plaintiff with various instruments, tapering him, and handcuffing his hands behind his back.

95.    Throughout the night of November 30, 2011, and into the following days, Mr. Fuller was unlawfully, wrongfully, and unjustifiably restrained by the NYPD and denied the ability to leave his apartment unrestrained and to force Defendants to leave his apartment, which they had entered without a warrant and without probable cause.

96.    At all relevant times, the unlawful, wrongful, and false imprisonment of Plaintiff was without basis and without probable or reasonable cause.

97.    All this occurred without any fault of Plaintiff.

98.    Defendants, their officers, agents, servants, and employees were responsible for Plaintiff's detention during the relevant time.  Defendant City, as employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

99.     Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard for Plaintiff's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct towards Plaintiff.

100.    The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers.  Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by the New York State Constitution.

101.    As a direct and proximate result of the misconduct and abuse of authority alleged in detail above, Plaintiff sustained the damages alleged herein.

### FOURTH CAUSE OF ACTION
Assault
(Against all Defendants)

102.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth herein.

103.    Defendants, acting within the scope of their employment, intentionally, willfully and maliciously assaulted Plaintiff, in that Defendants had the real or apparent ability to cause imminent harmful and/or offensive bodily contact to Plaintiff, and intentionally did violent and/or menacing acts which threatened such contact to Plaintiff, and that such acts caused apprehension of such contact in Plaintiff.

104.    Such acts include, without limitation, the donning of rubber gloves and brandishing of the billy club, as well as Defendants' forcing their way into Plaintiff's apartment without Plaintiff's permission or consent and without a warrant.

17

105.    Defendants, their officers, agents, servants and employees were responsible for and directly and proximately caused Plaintiff's assault.  Defendant City, as employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

106.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

## FIFTH CAUSE OF ACTION
Battery
(Against all Defendants)

107.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth herein.

108.    The individual Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered Plaintiff when they, in a hostile and/or offensive manner, repeatedly used their hands, feet, and other instruments (including a club) to strike Plaintiff without his consent and with the intent to cause harmful and/or offensive bodily contact to Plaintiff.

109.    Defendants, their officers, agents, servants, and employees were responsible for Plaintiff's battery.  Defendant City, as employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

110.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

## SIXTH CAUSE OF ACTION
Negligence
(Against all Defendants)

111.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth herein.

112.    The Officer Defendants owed a duty of care to Plaintiff not to unduly and unnecessarily injure him.

113.    The City Defendant owed a duty of care to Plaintiff in that it had a special relationship with Plaintiff because, among other things, the City voluntarily assumed a duty in sending officers to Mr. Fuller's home a second time on the evening in question, ostensibly to ensure his safety.  Mr. Fuller relied on the representations of the City and the Officer Defendants that they were there to help him in opening the door to the Officer Defendants, which opportunity the Officer Defendants then seized upon to push Mr. Fuller's door fully open and force themselves into his apartment without his consent, thereby beginning the chain of events that led to Mr. Fuller's severe and lasting injuries.

114.    Defendants breached the duty of care owed to Plaintiff by kicking, striking, and attacking Plaintiff with extreme force and causing severe damage to Plaintiff's trunk, arms, clavicle, and shoulder, among other injuries.

115.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged herein.

116.    All of the foregoing occurred without any fault on the part of Plaintiff.

117.    Defendants, their officers, agents, servants, and employees, were responsible for Plaintiff's detention and imprisonment during this period of time.

19

Defendant City, as employer of the Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## SEVENTH CAUSE OF ACTION
Negligent Hiring and Retention of Employment Services
(Against the City)

118.   Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth herein.

119.   Upon information and belief, defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse Plaintiff suffered at the hands of City employees.

120.   Upon information and belief, defendant City, through the NYPD, owed this duty of care to Plaintiff because under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that his conduct was likely to result in an injury to Plaintiff or a similarly situated person.

121.   Upon information and belief, the Officer Defendants were unfit and incompetent for their positions.

122.   Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that the Officer Defendants were potentially dangerous.

123.   Upon information and belief, Defendant City's negligence in hiring and retaining the Officer Defendants proximately caused Plaintiff's injuries.

124.   Upon information and belief, Plaintiff incurred significant, severe, and lasting physical and mental injury because of the City's negligent hiring and retention of the Officer Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

a.  Awarding compensatory damages for all physical and emotional distress, anxiety, humiliation, injury to reputation, emotional harm, pain and suffering, career, family and social disruption and other grievous harm, in an amount to be determined at trial;

b.  Awarding compensatory damages for all economic loss in an amount to be determined at trial;

c.  Awarding punitive damages in an amount to be determined at trial; and

d.  Awarding pre- and post-judgment interest, costs, attorneys' fees, and such other and further relief as this Court may deem just and proper.

Dated: January 22, 2013
      New York, New York

CUTI HECKER WANG LLP

By: _____
     Mariann Meier Wang
     Julie B. Ehrlich

305 Broadway, Suite 607
New York, New York 10007
(212) 620-2603
mwang@chwllp.com
jehrlich@chwllp.com

*Attorneys for Plaintiff Donald Fuller*